JAMES GUDGEL, Admr.

*v.*

MICHAEL KITTERMAN *et al.*

*Filed at Ottawa November 20, 1883.*

1. FRAUDULENT CONVEYANCE—*when grantor retains ample means to pay all his liabilities.* A person, in 1868, sold and conveyed to his two younger sons some six hundred acres of land, in consideration that they should pay to their sisters $10,000, and to a brother $500, and support, maintain and take care of their parents during their lives, the grantor at the time retaining other land more than sufficient to pay the only debt he then was liable to pay. The grantor placed the deed for the lands conveyed in the hands of another son, to be held by him, and delivered on payment being made to the grantees' sisters. Afterwards, in 1878, this deed was taken up and destroyed, and separate deeds made to each of said former grantees for his part of the land, according to a division made of the same, and they gave their notes to their sisters for the balance due them, and a bond to their father, conditioned for his and his wife's support, etc., and it appeared that the two sons (the grantees) took possession of the premises in 1868, and retained the same ever since, making valuable improvements thereon: *Held,* that the last deeds, made in 1878, in fulfillment of the agreement of 1868, were not fraudulent as against the debt on which the father was liable in 1868.

2. Where a debtor retains ample and abundant means to discharge and satisfy all his liabilities, he may, on the sale of other property, direct that the purchase money be paid to whom he pleases; and when he directs it to be paid to his daughters, part of which is so paid and notes given them for the residue, the debtor will have no interest in such notes, or in the money represented by them, and they can not be reached by his creditors.

3. SPECIFIC PERFORMANCE—*when with relation back.* Where two sons agree with their father, in consideration of the sale of land to them, to support him and his wife during their lives, and to pay certain sums of money to

a brother and their sisters, at certain specified times, under which contract they go into possession of the lands, pay all taxes, and make·valuable improvements thereon, support their parents, and pay the money agreed to be paid as fast as required under the agreement, a court of equity will enforce the contract, even if a deed made and left as an *escrow* fails to pass the title; and where such contract is enforced by a conveyance, the deed will have relation back to the time when the contract was made.

4. PARTIES—*chancery—to set aside deed as fraudulent as to creditors.* Where a father conveys a tract of land to one son for such son and four other sons, to be divided between them after a survey of the premises is made, on a creditor's bill against the grantee alone, the other sons having such interest not being parties, no decree subjecting such land to the payment of a judgment against the grantor can be rendered, for want of necessary parties to the bill.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Bureau county; the Hon. FRANCIS GOODSPEED, Judge, presiding.

Messrs. KENDALL & LOVEJOY, and Mr. E. S. LELAND, for the appellant:

The deed of 1868 never took effect for want of delivery. The conditions precedent to its delivery never had been performed, and it was void as against creditors. *Stone* v. *Duvall*, 77 Ill. 475; *Furness* v. *Williams*, *Admr.* 11 id. 229; *Stanley* v. *Valentine*, 79 id. 544; *Skinner* v. *Baker*, id. 496; *.Hoig et al.* v. *Adrian College*, 83 id. 267.

Delivery of a deed, to be effectual, must be with the. consent of the grantor. *Wormley* v. *Wormley*, 98 Ill. 544; *Wiggins* v. *Lusk*, 12 id. 132.

A voluntary conveyance without consideration, intended as a donation of land, placed in the hands of a custodian, may be withdrawn by the grantor at any time before delivery, and if left for delivery upon certain conditions, the custodian is not the judge of whether the conditions have been performed, and he has no right to deliver the same until the donor is satisfied. *Hoig et al.* v. *Adrian College*, 83 Ill. 267.

A debtor can not, as against his creditors, convey all his property to another to secure his future support and that of his wife. Such conveyance is fraudulent in law as to creditors, although it may be good as between the parties thereto. *Annis* v. *Bonar*, 86 Ill. 128; *Stevens* v. *Dillman et al.* 86 id. 233; *Patterson* v. *McKinney*, 97 id. 41; *Tunison* v. *Chamblin*, 88 id. 378; *Moore* v. *Wood*, 100 id. 451; *Crawford* v. *Logan*, 97 id. 396.

A voluntary conveyance to a wife or child, when the donor is in embarrassed circumstances, is fraudulent as to preëxisting creditors, even though the party retains estate nominally in value equal, or more than equal, to all his indebtedness, when the event shows that the property retained is, in fact, not sufficient to discharge his liabilities. *Patterson* v. *McKinney*, 97 Ill. 41.

Messrs. Farwell & Warren, for the appellees:

The deeds of 1878 are to be taken as relating back to the time of the making of the old deed in 1868, and treated as if then made. *Patterson* v. *McKinney*, 97 Ill. 41.

The deeds were not voluntary, so the question is not one of a gift. The support of the parents and the unmarried daughters, and the payment of the money to Henry and the sisters, establish a case of sale with all the elements of a valuable consideration. *Mathews* v. *Jordan*, 88 Ill. 602; *Bright* v. *Bright*, 41 id. 97; *Spear* v. *Griffith*, 86 id. 552; *Jefferson* v. *Jefferson*, 96 id. 551.

Though the agreement of 1868 had been by parol, without any deed, yet as defendants, John and George, had entered into possession under it, paid the $500 to Henry, paid to the girls large sums, supported the parents and unmarried daughters, and made valuable improvements, they could have compelled performance, and it was not in the power of Michael Kitterman to annul the agreement. *Bright* v. *Bright*, 41 Ill. 97; *Kurtz* v. *Hibner*, 55 id. 514; *Wood* v. *Thornly*, 58

id. 464; *Langston* v. *Bates*, 84 id. 524; *Spear* v. *Griffith*, 86 id. 552.

If we were to treat the matter as a gift of the lands, still the conveyances must be upheld. A gift from a father to children is good against even existing creditors, if he retains sufficient wherewith to pay his debts. *Moritz* v. *Hoffman*, 35 Ill. 553; *Emerson* v. *Bemis*, 69 id. 537; *Mathews* v. *Jordan*, 88 id. 602; *Patterson* v. *McKinney*, 97 id. 41.

In order to impeach such conveyance it devolves upon the party attacking it to show that the father was at the time in failing circumstances, embarrassed or insolvent, or that it was made with the fraudulent intent to defeat existing creditors, or with a view of contracting future debts. See authorities last cited.

The delivery of the deed to Robert was sufficient to pass the title and place the same beyond the grantor's control. The gift to the girls, if one, was executed, and could not be recalled.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by appellant, to set aside two certain deeds, one made by Michael Kitterman to John Kitterman, and the other made by Michael Kitterman to George Kitterman, conveying certain lands in Bureau county, and to subject the lands to the payment of a judgment. Appellant obtained judgment in the circuit court of Bureau county against Chauncey A. Dean and Michael Kitterman, on the 13th day of September, 1880, for the sum of $1688.49. It is alleged in the bill that the deeds were void as against appellant, who was a creditor of Michael Kitterman at the time they were executed.

It appears from the evidence that the note upon which the judgment was rendered was executed on the 14th day of June, 1866, signed by Chauncey A. Dean and Michael Kitterman; that Dean was the principal debtor, and Kitterman

was surety. Kitterman was a farmer, and had been many years a resident of Bureau county, and was, at the time his evidence was taken, eighty-two years old. He had ten children—six sons and four daughters. As his older sons became of age he gave them land, and they commenced business for themselves. When George and John became of age, Kitterman owned some seven or eight hundred acres of land. In 1868 he made an arrangement with these two sons, George and John, under which he conveyed to them, jointly, some six hundred acres of land, including his home place, and they agreed to support him and his wife during their natural lives, and pay his four daughters $10,000, and pay Henry, a brother, $500. This deed was never recorded, but it was delivered to Robert Kitterman, to be held by him until the money was paid to the daughters, as was specified in the agreement. The two sons, John and George, took possession of the lands embraced in the deed, and made valuable improvements thereon, and from time to time made payments to the daughters. They worked the lands together until 1876, when they disagreed, and two other brothers were called on to divide the lands between them, after which the lands were occupied by each as divided, the old deed remaining in the hands of Robert, as before. Thus matters stood until March 19, 1878, when the old deed was destroyed, and Kitterman and his wife conveyed to George and John the lands which they had occupied under the old deed, and they gave a bond binding themselves for the support of their father and mother, and also executed notes payable to the daughters for the balance of the $10,000, which had not before that time been paid. The bill in this case was filed to set aside the deeds last named.

The execution of the deed made by Michael Kitterman and wife to John and George Kitterman, in 1868, was proven by each witness who testified in the case. That deed, as is well established by the evidence, was delivered to Robert Kitter-

man, and he testified that his father gave him the deed, "and told me he wanted I should keep the deed until the boys paid the girls so much money." Indeed, there seems to be no substantial dispute on this point, and it may be regarded as settled by the evidence that the deed was delivered to Robert Kitterman, to be held by him until such time as the grantees therein paid to their sisters $10,000, in time and manner as agreed upon between them and the grantor. At the time this deed was made, Michael Kitterman was not insolvent. Indeed, it does not appear that he was indebted to any person except complainant on the note he had signed with Dean, and he retained a farm of one hundred and sixty acres of land, near Providence, which he sold, in 1869, for $6000, so that the property retained when the deed was made to his sons, in 1868, was ample to pay all liabilities. If, then, the contract entered into in 1868, between Michael Kitterman and his two sons, was sufficient to transfer the property from him to them, the transaction can not be impeached by this proceeding.

It is, however, insisted by complainant that the deed made in 1868, by Michael Kitterman, to his sons John and George, never took effect as a conveyance ; that it was an *escrow* in the keeping of Robert Kitterman, until destroyed by the direction of the grantor, in 1878, when the new deeds were made. It may be true that where a deed is delivered to a third party, to be held by him in *escrow* until the grantee shall perform certain conditions agreed upon between the grantor and grantee, the strict legal title does not, under such a transaction, pass to the grantee named in the deed until the conditions have been performed ; but that rule of law does not, in our opinion, impair the validity of this transaction. Here, the grantees named in the deed agreed to support Michael Kitterman and his wife during their life, and agreed to pay certain sums of money to a brother and their sisters, at certain specified times, in consideration of which they were to

have these lands. Under this contract they went into the possession of the lands. They have paid all taxes, made valuable improvements, supported the grantors, and paid the money agreed to be paid, as fast as the same was required to be paid under the contract. Now, if it be true the deed did not strictly pass the legal title, yet this was such a contract as might be enforced in a court of equity, and when enforced by a decree requiring a conveyance, the deed would have relation back to the time the contract was made between the parties. *Patterson* v. *McKinney,* 97 Ill. 45, in principle sustains this view. The fact that the deed made in 1868 was taken up and destroyed in 1878, and a separate deed made to each of the sons, does not, in equity, affect the rights of the sons. The deeds made in 1878 were but a fulfillment of the contract made in 1868 between Michael Kitterman and his sons, under which they went into possession of the lands in 1868, and performed their contract as purchasers, and the deeds of 1878 must have relation back to the date of the original contract; and as Kitterman then retained abundance of property to pay his debts, the transaction can not be regarded as fraudulent.

It appears from the testimony that a tract of land, consisting of seventy acres off the north end of the west half of the south-east quarter of section 6, town 15 north, range 9 east, was not included in the deed made in 1868, but it was embraced in the deed made to George Kitterman in 1878, and as Michael Kitterman retained no property to pay his debts after the making of this deed, it is contended that this land is liable to be subjected to the payment of the judgment. There is but little testimony in the record in regard to this tract of land. The controversy in the circuit court seems to have been chiefly over the other lands. The answer sets up that this tract had been sold by Michael Kitterman to his sons, Robert, Henry, Christopher and William Kitterman, before the deed was made to George, and that they were in

the possession thereof, and the deed was made to George so that he could convey to each his respective portion of the land when they should agree upon a division.    The only evidence in the record bearing upon this tract that we find, is that of John Kitterman, who says: "The last deed to George includes land not in the first deed, because the boys had had such land for years, but separate deeds were never made, for the reason it was not surveyed.    It was to be surveyed, and George was to make separate deeds to each of the boys."    Whether this tract of land was disposed of to Robert, Henry, Christopher and William at such a time and under such circumstances as would render the transaction fraudulent as against complainant, is a question which can not be determined here.    The record discloses that Robert, Henry, Christopher and William had an interest in the land, and as they were not parties to the bill the court could not properly render a decree subjecting the land to the payment of the judgment.

It is finally urged, that complainant is entitled to a decree against John and George Kitterman for so much of the money represented in the notes given by them to their sisters as will satisfy his judgment, because the money represented by the notes is an intended gift, and not good as against the rights of complainant.    The bill was not framed with a view to reach assets of this character; but if it was, under the facts of this case it could not be maintained.    When Michael Kitterman, in 1868, sold these lands to his two sons, he had a right, as he then retained ample property to pay his debts, to direct the consideration which they were to pay for the lands to be paid to any person or persons he might see fit.    He decided that $10,000 should be paid to his daughters, and the two sons subsequently paid to them a portion of the amount, and gave their promissory notes, payable to the respective daughters, for the balance.    After these notes were given, payable to the daughters, and placed in their hands, or in

the hands of a third party subject to their order, we do not think Michael Kitterman had any interest in the notes or the money represented by them, and they were in no manner subject to his control, or liable to be reached by complainant, who was his creditor. On the other hand, the notes became the absolute property of the daughters of Michael Kitterman, to whom they were payable.

After a careful consideration of all the facts presented by the record we perceive no error in the decree of the circuit court, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*